IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN G. OTSYULA,                           Civil No. 05-1449-AA
                                           OPINION AND ORDER

                Plaintiff,

        vs.

INTEL CORPORATION,

                Defendant.

_____

John G. Otsyula
2515 SE Lake Road
Milwaukie, Oregon 97222
        Plaintiff appearing Pro Se

Sarah Ryan
Amy Campbell
Ball Janik LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204-3210
        Attorneys for defendant

AIKEN, Judge:

        Defendant filed a summary judgment motion pursuant to Fed.

R. Civ. P. 56(a) requesting dismissal of plaintiff's claims.

Page 1 - OPINION AND ORDER

Defendant's motion is granted and this case is dismissed.

BACKGROUND

Plaintiff, a former Intel Corporation employee, was terminated effective December 31, 2004.  On September 19, 2005, plaintiff, appearing pro se, filed a complaint in this court. The complaint, in its entirety, alleged as follows:

> I am filing a complaint for violation of Title VII
> of the Civil Rights Act.  I was retaliated against for
> complaining about discriminatory acts in the workplace.
> The employer (Intel) retaliated against me with
> termination.  As a result I lost approximately $15,000
> in wages, incurred medical expenses, and suffered
> emotional damages.

Complaint, p. 1.

Defendant filed a motion to dismiss, or alternatively a motion to make more definite and certain.  This court denied defendant's motion to dismiss with leave to renew, and granted defendant's alternate motion for more definite statement allowing plaintiff twenty days to file an amended complaint.  The court specified that plaintiff should "identify the alleged 'discriminatory acts,' the nature of the 'discriminatory acts,' and date and time of the 'discriminatory acts,' to whom plaintiff's complaint was made, and the facts that support the casual link between plaintiff's complaint and the adverse employment action."  Opinion and Order (Dec. 13, 2005), p. 4. The court also ordered plaintiff to timely file and properly serve on the defendant an amended complaint containing these

factual allegations, or be subject to dismissal.   <u>Id.</u>

On December 27, 2005, plaintiff mailed to defendant's counsel a copy of plaintiff's amended complaint.   On December 29, 2005 (doc. 22), the court filed plaintiff's amended complaint. Defendant subsequently filed a renewed motion to dismiss plaintiff's amended complaint alleging it failed to state a claim for relief.   This court denied defendant's motion finding that plaintiff had adequately pled his claims.   Plaintiff then obtained counsel for a short period who filed a second amended complaint.   On November 3, 2006, this court granted plaintiff's counsel's motion to withdraw.   On December 5, 2006, plaintiff informed the court of his intention to once again proceed pro se in this case.   On December 13, 2006, upon the filing of the motion at bar, the court sent plaintiff a notice advising him of the Federal summary judgment standards.

<u>STANDARDS</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).   Substantive law on an issue determines the materiality of a fact. <u>T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.</u>, 809 F.2d 626, 630 (9th Cir. 1987).   Whether

the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. <u>Id.</u> at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>T.W. Electrical</u>, 809 F.2d at 630. In an employment discrimination case, "if a rational trier of fact could, on all the evidence, find that the employer's action was taken for impermissibly discriminatory reasons," summary judgment for the moving party is inappropriate. <u>Wallis v. J.R. Simplot</u>, 26 F.3d 885, 889 (9th Cir. 1994).

DISCUSSION

To state a Title VII retaliation claim, plaintiff must allege that he was: (1) engaged in a protected activity; (2)

subjected to an adverse employment action; and (3) that there was a casual link between the protected activity and adverse employment action.  Morgan v. Nat'l RR Passenger Corp., 232 F.3d 1008, 1017 (9th Cir. 2000).

PLAINTIFF'S ALLEGATIONS:

Plaintiff's second amended complaint alleges that after plaintiff's hire by the defendant in 2000 as a Facilities Technician II, in March 2002, he was promoted to Facilities Technician III due to his "outstanding work."  In April 2002, plaintiff's then-manager announced plaintiff's promotion to Technician III at a team meeting.  Plaintiff alleges that a fellow team member, Kay Chapman, became angry at plaintiff's promotion and "alienated plaintiff from the rest of the team." Chapman then rated plaintiff poorly.  Plaintiff alleges that his manager used Chapman's "poor" rating to justify the "Below Expectation" performance rating that plaintiff ultimately received prior to termination.

In August 2002, plaintiff received a performance review "which recognized his valued performance."  In October 2002, plaintiff obtained his Masters degree in public administration, specializing in environmental services.  Plaintiff approached his manager about increasing his grade level based on his work experience and education.  Despite the employer's "grade level chart" ("U.S. Nonexempt Technical Leveling Criteria") which

Page 5 - OPINION AND ORDER

supported a grade increase for plaintiff, management refused to
do so.

In January 2003, plaintiff joined the newly formed
Instrumentation team.  On February 21, 2003, "[d]uring a
discussion between plaintiff and Menard [the Instrumentation Team
Senior Technician] on instrument calibration, plaintiff suggested
that the procedure needed to be documented and standardized.
Menard responded by moving his chair to within two feet of
plaintiff's chair, shaking his finger in plaintiff's face, and
yelling at plaintiff, "This is tribal knowledge!  I don't want to
hear any more tribal knowledge!"

In March 2003, plaintiff's manager changed his job and
removed him from "Instrument analyzers and assigned him to do
temperature analyzer."  Plaintiff alleges that the defendant
failed to provide adequate training for this change and "set him
up to fail."  Plaintiff then requested a promotion to Facilities
Technician IV, which was rejected due to a performance rating of
"Below Expectation" that plaintiff received from his manager
after his request for a promotion. Plaintiff alleges that his
"corporate services individual development plan" was reviewed
with his manager and "nearly every item was marked as 100%
completed, giving him an overall grade of 96%."  Plaintiff was
told that despite his overall rating of 96%, it was his "lack of
teamwork" that caused his "Below Expectation" rating.

On April 6, 2003, plaintiff filed a complaint against his manager with defendant's Human Resources Department regarding his "Below Expectation" rating which plaintiff alleges he received due to his race[1]. The Human Resources investigator dismissed the case.

On April 7, 2003, plaintiff's attorney wrote a formal letter to the defendant outlining plaintiff's various charges of discrimination "based on race and/or national origin."

In April 2003, plaintiff's services were critical to obtaining the ISO certification because ISO requires that a UPW Level III Technician be on the team to support analyzer instrumentation. Plaintiff was the only member of the Instrumentation team who was a UPW Level III Technician. "As soon as the ISO certification was completed, Kilian (team manager) removed the plaintiff from working with analyzers."

In July 2003, "plaintiff took a course on HVAC Level 2 instrument control certification through the employer's enterprise-wide training program. The trainer was from a group unrelated to the Instrument team and had no previous experience with the plaintiff. The plaintiff passed with a very high score. During this time period, the plaintiff was struggling to pass HVAC Level I instrument control certification from his co-workers because they refused to train him."

---

[1] Plaintiff is of African descent, specifically from Kenya.

In August 2003, plaintiff applied for an engineering position.  Plaintiff was denied the position because Kilian had given him a "Below Expectations" rating and review.

In September 2003, plaintiff appealed the Human Resources decision.  The case was investigated and again dismissed.

In October 2003, Kilian did not allow plaintiff to continue to work with Bruce Brines.  Plaintiff alleges that Ryan Menard, Instrumentation Team Supervisor, and Tina Menard, Instrumentation Team Engineer, asked Kilian's supervisor, Wayne Potter, to force Kilian to fire Bruce Brines.  Plaintiff alleges that Kilian gave Brines two quick written warnings and "forced him to quit for supporting the plaintiff."

In October 2003, during an Instrumentation team meeting, Kilian and team member, Pete Tenney, expressed that they planned to use "the good old boy network" to reorganize the team.

In December 2003, plaintiff was "put on medical leave by a doctor and psychologist due to the hostile working environment created by plaintiff's employer."  Plaintiff's doctor and psychologist "did not release [the plaintiff] to return to work unless the work environment improved and it had not improved at the time of termination."  Plaintiff alleges that the "employer's own psychiatrist" who examined plaintiff in August 2004, "agreed that the work environment could not be ruled out as contributing to the plaintiff's condition."

Finally, in December 2004, after not working for the
defendant for one year, plaintiff was terminated.

Plaintiff alleges that he was one of three employees of
"African descent" in a group of over 186 employees, and that
plaintiff's "team senior technician" and coworkers subjected
plaintiff to the terms "monkey" and "tribal knowledge" to
intimidate and harass him.  Plaintiff alleges that these racial
terms and statements directed at him by his manager and coworkers
were evidence that the work environment was "not congenial" to
him, and that "at least three team members had already
demonstrated personal biases against him."  Finally, plaintiff
alleges that the race discrimination complaint he filed with the
Equal Opportunity Employment Commission (EEOC) resulting in the
EEOC issuing a "right to sue letter," was a "motivating factor"
in defendant's retaliation process, ultimately resulting in
plaintiff's termination.

ANALYSIS

I.  Insufficient Evidence in Opposition to Summary Judgment

First, the court notes that plaintiff failed to comply with
the court's order advising plaintiff that defendant's motion
would be granted if he did not submit "specific facts in
declaration, depositions, answers to interrogatories, or
authenticated documents . . . that contradict the facts shown in
the defendant's declaration and documents and show there is a

genuine issue of material fact for trial." Order, p. 2 (December
13, 2006). Plaintiff's response in opposition to defendant's
motion fails to comply both with the court's order and the
applicable summary judgment standard.

Specifically, plaintiff relies primarily on conclusory
assertions, and his subjective assessment of his performance and
qualifications for promotion. See Hernandez v. Spacelabs
Medical, Inc., 343 F.3d 1107, 1116 (9th Cir. 2003)(plaintiff's
"conclusory allegations, unsupported by facts, are insufficient
to survive a motion for summary judgment."). Because plaintiff
fails to "go beyond the pleadings and identify facts which show a
genuine issue for trial," defendant's summary judgment motion is
granted. Celotex Corp., 477 U.S. at 324.

II. Issue and Claim Preclusion

Second, the court finds that defendant is entitled to
summary judgment on plaintiff's claims under the doctrine of
issue preclusion. Specifically, plaintiff is precluded from
relitigating his hostile work environment, disparate treatment,
and retaliation claims because the allegations supporting these
claims, excluding his termination, were determined in defendant's
favor during the prior workers' compensation proceeding.

Courts apply a five part test to determine if an issue is
precluded from relitigation. Scott v. Sears, Roebuck and Co.,
395 F.Supp.2d 961, 969 (D.Or. 2005). Those elements are: (1) the

issue in the two proceedings is identical; (2) the issue was
actually litigated and was essential to a final decision on the
merits in the prior proceeding; (3) the party sought to be
precluded had a full and fair opportunity to be heard on that
issue; (4) the party sought to be precluded was a party or was in
privity with a party to the prior proceeding; and finally, (5)
the prior proceeding was the type of proceeding to which Oregon
courts will give preclusive effect.

The only fact that was not considered by the administrative
law judge (ALJ) which is before this court was plaintiff's
December 31, 2004, termination which occurred one year after
plaintiff's medical leave begin, on December 31, 2003. Plaintiff
ultimately accepted a position with another employer during his
year of medical leave with defendant.

I find that plaintiff is precluded from relitigating his
hostile work environment, disparate treatment, and retaliation
claims. Beginning in November 2003, plaintiff filed three
separate complaints concurrently with the Oregon Bureau of Labor
and Industries (BOLI) and the EEOC alleging that defendant
discriminated and retaliated against him. Def's Exs. 19, 20, 21.
After investigations by regulating bodies, including interviews
with multiple defendant employees, each of those complaints was
dismissed due to a lack of evidence to support the charge. Def's
Exs. 22-24. Following plaintiff's initiation of medical leave on

December 31, 2003, plaintiff filed a workers' compensation claim
for his alleged work-related stress injury. Def's Ex. 25. That
claim was denied and the denial was upheld on appeal. Def's Exs.
26, 27; see also, Otsyula v. Intel, 204 Or.App. 253, 129 P.3d 804
(2006).

Regarding the first prong of the issue preclusion test
outlined above, there is no dispute that plaintiff's claims in
both proceedings rely on identical facts and issues - race
discrimination and harassment. Specifically, plaintiff alleges
that he was subjected to a hostile work environment, and
discriminated and retaliated against "because of" his race or
national origin based upon his co-workers' treatment, denial of
promotions, poor performance reviews, and lack of training.
Plaintiff's Second Amended Complaint, ¶¶ 10, 13-17, 20, 24-25.
The ALJ found against plaintiff on these issues and concluded
that plaintiff failed to meet job expectations, required more
training, and as a result, was less available to assist his team
members. Def's Ex. 26. The ALJ further found that the three
"racially offensive comments" were not racially motivated and
that plaintiff "simply misinterpreted their meaning and intent."
Id. Specifically, the ALJ concluded that "the alleged incidents
of harassment did not exist in a real and objective sense." Id.
Therefore the ALJ found that plaintiff failed to establish that
he was subjected to discrimination, retaliation and hostility.

Id.  The issues in plaintiff's workers' compensation hearing and
the facts alleged by plaintiff are identical to those before this
court.

Second, regarding whether the issue was actually litigated
and essential to a final decision on the merits in the workers'
compensation proceeding, I find that both plaintiff's workers'
compensation claim, and the lawsuit at bar, are based on his
allegations of discrimination, retaliation, and hostile work
environment. The ALJ found that plaintiff was not isolated by his
team; he required more training than other team members and as a
result was less available to assist team members; the alleged
racial comments were not racially motivated and/or plaintiff
"simply misinterpreted their meaning and intent;" and defendant's
corrective and job performance evaluations were reasonable.
Def's Ex. 26.  The ALJ concluded that plaintiff failed to
establish discrimination or harassment and denied plaintiff's
claim.  There can be no dispute that the ALJ's decision as to
these issues was essential to his decision on the merits.

Third, regarding whether plaintiff had a full and fair
opportunity to be heard, again, there is no dispute that
plaintiff was heard, including presentation of witnesses and
evidence to an administrative law judge who issued a decision on
the merits in favor of the defendant.  Moreover, on appeal to the
reviewing panel of the Workers' Compensation Board, the panel

agreed to consider new and untimely evidence produced by
plaintiff. Def's Ex. 27.  See also, Stanich v. Precision Body and
Paint, Inc., 151 Or.App. 446, 455, 950 P.2d 328 (1997)(in the
absence of evidence to the contrary, workers' compensation
proceedings provided full and fair opportunity to be heard on
issues).

Regarding the fourth prong, there is no dispute that
plaintiff is the same party that stood before the ALJ in the
workers' compensation proceeding.

Finally, regarding the fifth prong, it is well settled that
a workers' compensation proceeding is the type of administrative
determination that can be the basis for preclusion in a later
civil judicial proceeding.  See Scott, 395 F.Supp.2d at 972
(plaintiff was precluded from relitigating all of the issues
considered by the ALJ in the prior workers' compensation
proceeding).  See also, Misischia v. Pirie, 60 F.3d 626, 629 (9th
Cir. 1995)("Federal courts must accord a state court judgment the
same preclusive effect that the judgment would receive in state
court.  This rule extends to fact-finding by administrative
agencies acting in quasi-judicial capacities.  We accord
preclusive effect to state administrative adjudications of legal
as well as factual issues")(internal citations omitted).

Therefore, based on the doctrine of issue and claim
preclusion, I find that plaintiff's claims litigated and decided

by the ALJ in the workers' compensation proceeding are precluded from being re-litigated in this proceeding.

III.  Merits of Plaintiff's Claims

Finally, the court will also consider plaintiff's claims on their merits.

A. HOSTILE WORK ENVIRONMENT

To state a hostile work environment claim under either Title VII or 42 U.S.C. § 1981, "the employee must show (1) that he or she was subjected to verbal or physical conduct based upon race or national origin; (2) that the conduct was unwelcome; and (3) that the conduct was 'sufficiently severe or pervasive to alter the conditions of [his or her] employment and create an abusive work environment.'" Williams v. Home Depot U.S.A., Inc., 2006 WL 1005076 at *4 (D.Or. 2006)(internal quotation omitted).

The Supreme Court states: "'[Simply teasing,' . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). See also, Haskins v. Owens-Corning Fiberglass Corp., 811 F.Supp. 534, 538 (D.Or. 1992)("Racial comments that are merely part of casual conversation,. . . are accidental, or are sporadic do not trigger Title VII's sanctions.").

Plaintiff fails to produce any objectively reasonable evidence that he was subjected to verbal (or physical) conduct

because of his race or national origin.  Other than plaintiff's
conclusory statements, I find no connection between plaintiff's
race or national origin and the allegedly offensive verbal
conduct.  <u>Hotchkins v. Fleet Delivery Service</u>, 25 F.Supp.2d 1141,
1149 (D.Or. 1998)("the only evidence presented by [plaintiff]
that he was treated a particular way because of his race was the
evidence related to his confrontation with [a co-worker] in which
[the co-worker] called [plaintiff] a 'nigger.'").  The <u>Hotchkins</u>
court found plaintiff's evidence insufficient to state a hostile
work environment claim.  <u>Id.</u>  Plaintiff's allegations are
conclusory, unsupported by the record, and/or actually
contradicted by the record.

     Plaintiff's hostile work environment claim also fails
because the alleged conduct was not sufficiently severe or
pervasive to alter the conditions of plaintiff's employment.
'Altering the conditions of employment' requires an employee to
show "both subjective and objective hostility in the workplace."
<u>Williams</u>, 2006 WL 1005076 at *4.  Plaintiff's complaints do not
approach the level of conduct required by the Ninth Circuit to
create a hostile work environment that is sufficiently severe and
pervasive.  <u>See</u> <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027 (9th
Cir. 1990), <u>cert. denied</u>, 502 U.S. 957 (1991)(court dismissed a
hostile work environment claim despite evidence that employer
posted a racially offensive cartoon, made racially offensive

slurs, targeted Latinos when enforcing rules, provided unsafe
vehicles to Latinos, failed to provide adequate police backup to
Latino officers, and kept illegal personnel files on plaintiffs
because they were Latinos).

Finally, plaintiff fails to establish that the complained of
conduct was unwelcome.  Plaintiff admits that he engaged in some
of the same conduct that he now complains was offensive.  For
example, plaintiff used the complained of phrase "tribal
knowledge" when talking with co-workers.  Otsyula Depo., p. 160.

In conclusion, I find that plaintiff's hostile work
environment claim fails as a matter of law because plaintiff did
not establish the necessary elements of a prima facie case.

B. RETALIATION

Plaintiff's claim for retaliation similarly fails as a
matter of law.  "To establish a prima facie case of
discriminatory retaliation . . . a plaintiff must demonstrate 1)
that he engaged in a protected activity; 2) his employer
subjected him to an adverse employment action; and 3) there was a
causal link between the protected activity and the adverse
employment action."  Rivera v. Treesource Industries, Inc., 2005
WL 608265 (D.Or. 2005)(internal citation omitted).  "If a
plaintiff has asserted a prima facie retaliation claim, the
burden shifts to the defendant to articulate a legitimate
nondiscriminatory reason for its decision.  If the defendant

articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). A plaintiff can present either direct or circumstantial evidence tending to prove that the plaintiff was retaliated against for making a complaint of discrimination. Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2004).

Plaintiff alleges that in retaliation for his internal complaint and the letter sent by his attorney in April 2003, defendant: (1) terminated his employment; (2) failed to promote him;(3) failed to train him; and (4) imposed two written warnings on him. Plaintiff's allegations that he was (1) not promoted in October 2002; (2) denied the Team Lead position in January 2003; (3) denied training while on his former or current teams prior to his April 2003 complaints; (4) removed from the analyzers in March 2003; and (5) given a "below expectations" rating for his performance in 2002, are not actionable because they all occurred prior to any alleged protected activity on April 2, 2003. Second Amended Complaint, ¶¶ 14-17, 21, 25. Plaintiff, therefore, fails to establish any causal link between the protected activity and the adverse employment action. Moreover, I find no evidence whatsoever, that the reasons for the adverse employment action were pretextual.

Finally, I find no causal connection between plaintiff's discrimination complaints in April and December 2003 and his termination effective December 31, 2004.  Plaintiff fails to provide any specific and substantial evidence that his termination, pursuant to defendant's established guidelines regarding leave exceeding 365 days, was in retaliation for his discrimination complaints.  Summary judgment is granted on plaintiff's claim for retaliation.

    C. DISPARATE TREATMENT

    Plaintiff's claim of disparate treatment also fails as a matter of law.  To prevail on a claim of disparate treatment based on race, a plaintiff must prove that his employer's employment decisions were motivated by intentional discrimination.  Washington v. Garrett, 10 F.3d 1421, 1431-32 (9th Cir. 1994).  The elements of this claim are: (1) membership in a protected class; (2) qualification for the job or satisfactory performance of the job; (3) an adverse employment decision; and (4) different treatment than those similarly situated outside of the protected class.  Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1018 (9th Cir. 2006).

    Once the employer has introduced evidence of a legitimate, non-discriminatory reason for the employment action, the plaintiff must produce evidence that the employer's reason is pretextual.  Plaintiff must offer evidence that allows a

Page 19 - OPINION AND ORDER

reasonable factfinder to conclude that either: (1) the alleged reason for the adverse employment action was false; or (2) the true reason was a discriminatory one. <u>Agha v. Rational Software Corp.</u>, 252 F.Supp.2d 1074, 1084 (D.Or. 2003). I find no evidence of plaintiff's different treatment than the treatment afforded those similarly situated outside of the protected class. Moreover, plaintiff failed to provide any evidence of pretext. Therefore, plaintiff's disparate treatment claim fails.

CONCLUSION

Defendant's summary judgment motion (doc. 59) is granted. This case is dismissed. All pending motions are denied as moot. IT IS SO ORDERED.

Dated this 12th day of February 2007.


_____
Ann Aiken
United States District Judge